

60 Sutton Place South, Apt. 14CN
New York, New York 10022

December 7, 2020

The Honorable Robert E. Grossman
U.S. Bankruptcy Court Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re: Case no. 09-13035 RGS, North Hills L.P.

Dear Judge Grossman,

        As a creditor in the above matter, I respectfully object to the proposed schedule of fees
and disbursements as set forth in the application dated November 16, 2020, by Kenneth P.
Silverman, Esq., Chapter 7 Trustee.

        The Trustee has accumulated receipts totaling $388,248.11. According to the Trustee's
application, fees and expenses would total $362,905.36, leaving a balance of just $25,342.75, or
6.5% of the total, to be distributed to creditors.

        By way of background, North Hills L.P. is the remnant of a Ponzi scheme perpetrated by
Mark Evan Bloom, who quickly pled guilty to securities fraud and other charges when the scam
imploded in 2008. At that time, federal authorities seized Bloom's assets along with those of his
wife under a consent agreement. Those assets were not included in this Chapter 7 liquidation.
Kenneth P. Silver was appointed as Trustee in June 2009.

        In 2013, the Trustee and his law firm SilvermanAcampora LLP petitioned the court for
an interim compensation award of $186,484.20, representing 80% of its proposed compensation
through September 30, 2013, totaling $233,105.85. In addition, the Trustee asked for
reimbursement of $5,061.35 in expenses. To date, the court has disbursed $207,475.33. I assume
the bulk, if not the entirety, went to compensate the Trustee and SilvermanAcampora. Creditors
to date have received nothing. In his interim application, the Trustee claimed he and
SilvermanAcampora worked approximately 700 hours (on page 2 he states 712.39 hours, on
page 11 he states 686.95 hours) at a blended rate of $339.33 an hour.

        In fact, both the hours expended and the hourly rate are excessive. This bankruptcy did
not present any monumental challenges to the Trustee. Neither Bloom nor his wife challenged
the bankruptcy proceedings. Why should they? North Hills had no assets. Bloom had stripped
what he could from North Hills and left a shell. There were no assets to dispose of, no thorny
legal issues to argue. The U.S. Attorney's office had all the relevant records and documents and
had done its own forensic accounting into North Hills' operations. In short, there was little for
the Trustee to do.

        Since North Hills had no assets to speak of, the Trustee and SilvermanAcampora initiated
48 separate "adversary proceedings to recover transfers made by the Debtor to certain
individuals *for the benefit of the Debtor's creditors and estate.*" (Emphasis mine). The Trustee

settled these causes of action, ostensibly to benefit creditors, for pennies on the dollar. The Trustee accepted a $2,900 token settlement from Brian Zucker, the accountant who prepared K1's for North Hills, and $25,822.48 from Victor Rosenzweig, a director of North Hills, and $7,500 from his law firm, Olshan, Grundman, Frome and Rosenzweig. The settlement amounts were about 10% of the claims at issue.

The bulk of the adversarial proceedings were claw back claims against former North Hills investors who had redeemed some or all of their investments before the Ponzi scheme collapsed. One could argue that, on the basis of equity, those investors should share in the loss in order to mitigate the damages to other, less fortunate investors. But the Trustee and SilvermanAcampora did not zealously pursue this avenue for redress. Instead, according to copies of court filings and settlement agreements (See attached), they typically settled for five cents on the dollar.

Now, the Trustee is petitioning the court for an additional $22,664.15 in legal fees for himself and $79,238.06 for his firm SilvermanAcampora in addition to $53,527.82 in expenses. If this application is granted, then out of $388,248.11 in recovered assets, creditors will receive $25,342.75. **That means for every $100 clawed back from past North Hills investors, creditors would receive $6.53.**

The Trustee asserts his proposed fees "are reasonable and the services rendered were necessary, effective, efficient, and economical." I disagree. The 48 adversarial proceedings were by and large boilerplate causes of action based on the same legal theory and differing only in names, addresses and amounts. This should not have required 700 hours of legal work at $339 an hour. The Trustee was assigned to help creditors. Instead, he helped himself. At the end of the day, paying creditors $6.53 out of every $100 recovered is not effective, efficient, or economical.

Nor was it necessary, considering how little was gained and from whom. Most, if not all of the past investors did not suspect they were invested in a Ponzi scheme. The Trustee and his firm SilvermanAcampora, for lack of a better word, shook down past North Hills investors, not to benefit creditors, but to benefit themselves, and in the process, creating another class of victims. The Trustee made quick and dirty settlements for pennies on the dollar, just enough to cover their hourly fees and expenses with a face-saving pittance left over for creditors. What did the Trustee accomplish? Money is being taken from the pockets of one class of investors, ostensibly to pay back creditors, **but not before 78% of the money is diverted to the pockets of the Trustee and his law firm in the form of fees while another 15% goes to pay expenses.** After expenses, the Trustee and SilvermanAcampora would be awarded more than 92% of the funds recovered while creditors would receive less than 8%. If an attorney told you your case was worth about $400,000, but after expenses the split would be 92-8 in his favor, would you hire him?

The Trustee cites Lodestar guidelines in support of the proposed fees. According to the American Bankruptcy Institute, under Lodestar, "The final factor generally used in determining the amount of reasonable hours in a case is an analysis of the billing judgment used by the professional requesting its fees. In order to prove that a bill has been properly reviewed by a professional, counsel in their fee request should set forth what time has been written off in order to demonstrate the proper use of billing judgment. *In re Automobile Warranty Corp.,* 138 B.R. 72 (Bankr. D. Colo. 1991). (See attached, "What is Reasonable Under Lodestar?" ABI Journal,

December/January 2004). Despite the imbalance between fees and expenses on the one hand and the amount actually paid to creditors on the other, the Trustee has made no modification to its compensation nor has the Trustee seen fit to write off any time. The ABI article also said that under Lodestar "the results obtained by the professionals. *In re Atwell*, 148 B.R. at 492-493…would generally be considered in cases where a fee enhancement was requested, although *in extreme cases it could also be used to reduce fees.*" (See attached, "What is Reasonable Under Lodestar?" ABI Journal, December/January 2004, Emphasis mine.). Such a reduction of fees in this instance would be warranted. Otherwise, creditors would be forced to accept restitution of merely $6.53 for every $100 in recovered funds.

Not only has the Trustee not exercised any proper billing judgment, he has gone further in requesting the court approve an additional $78,865.55, equal to fully a third over and above its legal compensation, to be paid to SilvermanAcampora as attorney for Trustee fees. This should be denied in toto. A plumber presents you with a $400 bill to repair a $300 water leak. What's the extra $100 for? "That was for my time preparing the bill and ensuring that it was fair and accurate." What does Lodestar advise? According to the American Bankruptcy Institute, courts generally limit such fees for the preparation of fee applications. "While most courts permit reimbursement of at least same (sic) professional fees for fee application in Lodestar cases, *the amount of time is generally limited. Further, it is an open question as to whether any professional fees will be awarded for the defense of, as opposed to the preparation of, a fee application.*" (See attached, "What is Reasonable Under Lodestar?" ABI Journal, December/January 2004, Emphasis mine.)

In short, the Trustee and SilvermanAcampora,LLP, whose motto is "Character is Everything", milked this Chapter 7 Trusteeship for all that it was worth or, if not all, 80% to 90% of what it was worth. I suggest the court not pay the Trustee or SilvermanAcampora any more fees and would even suggest that the court claw back some of the compensation that was disbursed in 2013 and distribute the balance to creditors.

Thank you.

Sincerely,

Joseph Borini

Enc.    "What is Reasonable under Lodstar", ABI Journal, Dec/Jan 2004
        Notice of Presentment of Order Under Bankruptcy Rule 9019 (1) Approving the
        Settlement Agreement, (II) Closing Adversary Proceedings

cc.     Office of the United States Trustee
        Kenneth P. Silverman, Bankruptcy Trustee
        Anthony C. Acampora, Partner-in-Charge, SilvermanAcampora LLP

Join Today and Benefit Daily from ABI's 35+ Years of Insolvency Expertise.    Join Today!


AMERICAN
BANKRUPTCY
INSTITUTE

## ABI Journal

# What Is Reasonable under Lodestar

## Dec/Jan 2004
Straight & Narrow

Help
Center

**Journal Article:**

This month's Straight & Narrow explores the basic but critical question of what factors must be considered in determining reasonable hours and reasonable professional rates under the Lodestar Standard.2 While the reasonable-hours-times-reasonable-rates formula under Lodestar is well-known and has been extensively analyzed, the more difficult questions of what constitutes reasonable rates and hours has not received extensive judicial review.3 As a determination of reasonableness in a given case is a factual, rather than legal, inquiry,4 I will not attempt to provide an exact answer to this great philosophical question but instead will describe certain factors that generally should be considered in "reasoning" what are appropriate professional fees.

## LET'S GO TO THE STATUTE

11 U.S.C. §330(3)(A) provides that:

*In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent and the value of such services, taking into account all relevant factors, including (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed; and (e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.*

While this provision of the Bankruptcy Code sets forth a few key factors for courts to consider, the factors set forth in §330(3) are by no means exhaustive. *See, generally, Johnson v. Georgia Highway Express Inc.,* 488 F.2d 714 (5th Cir.1974) (setting forth 12 factors to be considered in determining reasonable hourly rates and reasonable hours for an award of professional fees). However, the U.S. Bankruptcy Court for the Western District of Kentucky in *In re Atwell*5 attempted to devise a framework for resolving these questions by formulating a set of factors to be used in determining (1) reasonable hourly rates, (2) reasonable hours expended on the tasks in question and (3) whether there should be global modifications to the requested professional fees.

## LET'S SEE, THE MOON IS IN THE SEVENTH HOUSE, SO THIS YEAR'S HOURLY RATE IS...

*Atwell* lists six factors to be considered in determining what constitutes a reasonable rate of compensation. The first and most important of these factors is the customary hourly rate charged by the professional in question.6 In litigating any objection to fees, this is the starting point of determining reasonable hourly rates. Professionals seeking to defend their fee requests should consider providing general billing records for the professionals or fee applications in other bankruptcy cases to establish their hourly rates.

The second factor that should be established in litigation involving the reasonableness of a professional's rates is whether the rate charged by the professional is commensurate with rates charged by other similar professionals. The principal issues that will arise under this factor are: (1) do you compare the professional's rates to other bankruptcy professionals only or to all similar professionals regardless of their specialty?7 and (2) do you compare the professional's rates to the rates charged where the bankruptcy is pending or where the professionals generally practice?8 In situations such as this, parties should consider using

expert witnesses or fee studies to support their positions.9

A third factor to be used in determining the reasonableness of fees is the skill of the attorney and quality of legal services provided. This is one of the most subjective elements of the consideration concerning the reasonableness of rates, as it goes not to an attorney's general billing rate or a comparable rate of compensation in an appropriate market, but to how well the attorney performed his tasks in the case. This issue will generally be resolved by a review by the court of the professional's performance in the case.

The fourth factor in determining the reasonableness of hourly rates is the difficulty and novelty of the issues present in a case. More complex issues will probably require more senior levels of attorneys to work on those issues. This consideration primarily addresses the issue of the level of staffing of specific issues in a case. Counsel should work to ensure that the staffing levels used and the rates charged for a particular matter addressed in a case are appropriate for the importance and complexity of that matter.10

A fifth issue controlling reasonable hourly rates concerns whether the tasks performed by a professional would be considered "clerical" duties that would either be considered part of a professional's overhead (and not compensated) or compensated at much lower rates. While there has been a recent trend both in bankruptcy and non-bankruptcy settings to compensate paraprofessional work as professional fees rather than a form of expense, there is still a great deal of discussion as to the appropriate rate for such billings.11

The sixth and final factor that should be reviewed by courts in determining the reasonableness of hourly rates is the billing agreement between the debtor or committee and the professional and the use of reasonable billing judgment by the professional in charging its clients under that contract. A billing agreement, approved by the court as part of the professional's retention, will govern how the debtor should be billed, unless the court agrees to this modification of the billing agreement. Further, as noted by the Supreme Court,12 attorneys should exercise billing judgment in reducing the hourly rates charged on a matter where appropriate. However, at all times professionals should disclose in their fee applications how they exercised their billing judgment and should be able to provide evidence of the care with which they reviewed their bills in any disputed hearings over fees.

## IT'S ABOUT TIME...UH, YEAH IT IS

*[I]n this era of increasingly complex fee litigation it is sometimes important to take time to view the forest instead of carefully examining the specific branches of the various trees.*

The second component of the Lodestar calculation of an appropriate professional fee is the determination of the reasonable hours expended in a bankruptcy case. This port Lodestar analysis is generally given stricter scrutiny than the reasonable-rate co courts seek to ensure that professionals are not compensated for inefficiency or time on projects that are not beneficial to the estate.13

The initial factor in determining what constitutes reasonable hours expended in a case concerns the nature of the issues involved in the proceeding. The more difficult, unusual or complicated issues present in a case, the more time that will be spent by the professional. Further, the size and magnitude of a particular issue will also be important in determining the reasonableness of the hours expended in a matter. Unfortunately, as noted by the *Atwell* court, the size, importance and difficulty of the issues in dispute in a bankruptcy case is a purely factual question that must be made on a case-by-case determination.14

The second factor important to determining what constitutes a reasonable amount of time spent on matters in a case is the amount of time spent on comparable matters in similar cases by comparable counsel. This factor is more often applied in an analysis of chapter 13 fees, where numerous routine pleadings often make up the bulk of a professional's fees. However, such a review can also be applied in chapter 11 cases.15

The third element to be used in evaluating the reasonable hours expended by a professional in a bankruptcy case is the nature and characteristics of the debtor in a particular case. A debtor with a simple debt structure that is in the process of selling its assets or has terminated its operations will generally have fewer legal and factual issues in dispute than an operating chapter 11 debtor with several viable but different potential business models, a complex debt structure and significant pending litigation.

The fourth factor that must be considered in determining whether the hours claimed by the professional are reasonable is the amount and degree to which matters are litigated. While professionals should not be compensated for causing needless litigation,16 professionals should not be penalized by having the actual time spent on a matter reduced solely because they were faced with zealous or perhaps overly zealous opposition that led to what would otherwise be an excessive amount of time spent on a matter. *See Stalnaker v. DLC Ltd.,* 376 F.3d 819 (8th Cir. 2004) (court awarded trustee's counsel its requested fees even though defendant settled case and paid all creditors in full after four years of litigation on a fraudulent-conveyance suit that became moot upon the defendant's payment to creditors).

A fifth factor to be considered in determining reasonable time expended in a case is the amount of time spent in preparing attorney fees applications. While most courts17 permit reimbursement of at least same professional fees for fee application in Lodestar cases, the amount of time is generally limited. Further, it is an open question as to whether any professional fees will be awarded for the defense of, as opposed to the preparation of, a fee application.

The final factor generally used in determining the amount of reasonable hours in a case is an analysis of the billing judgment used by the professional requesting its fees. In order to prove that a bill has been properly reviewed by a professional, "counsel in their fee request should set forth what time has been written off" in order to demonstrate the proper use of billing judgment. *In re Automobile Warranty Corp.,* 138 B.R. 72 (Bankr. D. Colo. 1991).

# JUDICIAL EYE FOR THE FEE...PERSONS: GLOBAL MODIFICATIONS OF PROFESSIONAL FEES UNDER LODESTAR

Finally, the *Atwell* court lists five additional factors that should be considered in whether a fee should be modified either up or down, taking the fee request as a whole rather than by adjusting specific rates or hours charged. These factors are: (1) compliance with employment and fee application requirements, (2) opportunity costs in the time the engagement has taken away from other potential matter, (3) the undesirability of the case, (4) the potential contingent nature of the compensation and (5) the results obtained by the professionals. *In re Atwell*, 148 B.R. at 492-493.

In briefly discussing these factors, the *Atwell* court stressed that factors 2, 3 and 4 of the global modifications would only be used to modify fees in the rarest and most unusual cases. The *Atwell* court also noted that factor 1 would generally be used to globally reduce fees[18] while factor 5 would generally be considered in cases where a fee enhancement was requested,[19] although in extreme cases it could also be used to reduce fees.[20]

## CONCLUSION

While the thrust of this column has been primarily to restate the obvious in the area of fee litigation, in this era of increasingly complex fee litigation it is sometimes important to take time to view the forest instead of carefully examining the specific branches of the various trees.

## Footnotes

1 Board Certified in Business Bankruptcy Law by the American Board of Certification. Return to article

2 "The Lodestar method calculated as the number of hours reasonable expended multiplied by a reasonable hourly rate is the appropriate calculation of fees [under 11 U.S.C. §330]." *Stalnaker v. DLC Ltd.*, 376 F.3d 819, 825 (8th Cir. 2004). Return to article

3 *See In re Atwell*, 148 B.R. 483, 488 (Bankr. W.D. Ky. 1993) ("While the Lodestar Standard is easy to articulate, defining its two key term simple."). Return to article

4 *See, generally, Stalnaker v. DLC Ltd*, 376 F.3d at 825; *Matter of Taxman*, 49 F.3d 310 (7th Cir. 1995). Return to article

5 148 BR at 483. In support of full disclosure, the author had the honor of serving as the law clerk for Hon. Henry H. Dickinson when he authored the *Atwell* opinion. Return to article

6 For a discussion of customary hourly rates, *see* Bowles, C.R., "Are All Attorneys Created Equal?" 23 Am Bankr L.J. 32 (Mar. 2004); *see, also, In re Busy Beaver Building Centers*, 19 F.3d 833 (3rd Cir. 1994) (professional fees should be awarded in bankruptcy cases on the same economic basis as fees are paid by non-bankruptcy clients); *Matter of Taxman Clothing Co.*, 49 F.3d 310, 315-316 (7th Cir. 1995); *In re Atwell*, 148 B.R. 483, 488-89 (Bankr. W.D. Ky. 1993). Return to article

7 *See In re Fleming Cos. Inc.*, 304 B.R. 85 (Bankr. D. Del. 2003). Return to article

8 *See, generally, In re Farly Inc.*, 156 B.R. 203 (Bankr. N.D. Ill. 1993) (counsel location of general practice governs fees); *In re Grimes*, 115 B.R. 639 (Bankr. D. S.D. 1990) (local rates may prevail if matter could be handled by local counsel). Return to article

9 *See Matter of River Landings Inc.*, 180 B.R. 701 (Bankr. S.D. Ga. 1995) (discussing use of expert testimony on fees). Return to article

10 *See In re McClanahan*, 137 B.R. 73, 75 (Bankr. M.D. Fla. 1992) (hourly rates requested by counsel in a routine consumer chapter 13 case exceeded rates charged at that time by attorneys in complex chapter 11 cases). Return to article

11 *See, generally, In re Busy Beaver Bldg. Centers Inc.*, 19 F.3d at 833. Return to article

12 In *Hensley v. Eckerhort*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court noted: "[attorneys] should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary; just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here." Return to article

13 *See Matter of Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995); *In re Atwell*, 148 B.R. at 491. Return to article

14 148 B.R. at 491. Return to article

15 *See Matter of Taxman Clothing Co.*, 49 F.3d 310, 314-315 (discussing comparison of typical preference litigation with similar litigation). Return to article

16 *Id.* at 316 (denying $78,000 of an $85,000 fee awarded for engaging in a preference lawsuit that could only have resulted in a $33,000 judgment for the bankruptcy estate). Return to article

17 *See, generally, Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986). Return to article

18 *See, generally,* Freeman, "Current Issues in Bankruptcy Ethics," 091803 ABI-CLE 265 (Sept. 18-21, 2003), for a discussion of the problems in failing to comply with the provisions of the Bankruptcy Code, Bankruptcy Rules and applicable local rules in seeking employment or requesting awards of fees. Return to article

19 *See* Protapopas, Lydia T., "Fee Enhancements: How Do You Get One, Parts I and II," 20 Am. Bankr. Inst. J. 1 and 20 Am. Bank. Inst. J. 12 (2001). Return to article

20 *See, generally, Matter of Taxman Clothing Co.*, 49 F.3d at 310. Return to article

**Journal Date:**
Wednesday, December 1, 2004

Reprint Request

American Bankruptcy Institute | 66 Canal Center Plaza, Suite 600 | Alexandria, VA 22314

Tel. (703)739-0800 | Fax. (866)921-1027

☐ 2020 American Bankruptcy Institute, All Rights Reserved

Help
Center

JUN 1 2 2012

SilvermanAcampora LLP
Attorneys for Kenneth P. Silverman, Esq.,
Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
David J. Mahoney, Esq.

Presentment Date: July 3, 2012
Time: 12:00 p.m.

Objections Due: June 26, 2012
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:

       NORTH HILLS, L.P.,

              Debtor.

Chapter 7
Case No.: 09-13035 (REG)

----------------------------------------------------------X

KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

              Plaintiff,

        -against-

THE ESTATE OF ANITA SEITS, AND,
MERRILL LYNCH & CO., INC.,

             Defendants.

Adv. Pro. No.: 11-02361 (REG

----------------------------------------------------------X

KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

              Plaintiff,

        -against-

EVANS FOUNDATION,

             Defendant.

Adv. Pro. No.: 11-02368 (RE(

----------------------------------------------------------X

KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

              Plaintiff,

        -against-

CW MCHUGH CORP.,

             Defendant.

Adv. Pro. No.: 11-02370 (RE(

----------------------------------------------------------X

**NOTICE OF PRESENTMENT OF ORDER UNDER BANKRUPTCY
RULE 9019 (I) APPROVING THE SETTLEMENT AGREEMENT,
(II) CLOSING ADVERSARY PROCEEDINGS**

**PLEASE TAKE NOTICE**, that Kenneth P. Silverman, Esq., in his capacity as ch

trustee (the "Trustee") of the North Hills L.P. bankruptcy estate, by his at

SilvermanAcampora LLP, will present an Order to the Honorable Robert E. Gerber,

States Bankruptcy Judge, in his courtroom at the Alexander Hamilton US Custom Hou:

Bowling Green, New York, New York 10004, for signature on **July 3, 2012 at 12:(**

seeking approval of the Settlement Agreement resolving the claims against The Estate

Seits, Merrill Lynch & Co., Inc., Evans Foundation, and CW McHugh Corp.  A cop:

proposed Order is attached as **Exhibit 1** to the accompanying motion.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the proposed Or

be (i) made in writing, (ii) filed with the Court electronically in accordance with General (

399 by registered users of the Court's electronic case filing system and, by all other p

interest, mailed to the Clerk of the United States Bankruptcy Court, One Bowling Gre

York, New York 10004, on a 3.5 inch floppy disk with a hard copy delivered direct!

Chambers of the Honorable Robert E. Gerber, United States Bankruptcy Judge, One

Green, New York, New York 10004, and (iii) served in accordance with General Order I

other form upon SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jeric

York 11753, Attn: David J. Mahoney, Esq., and the Office of the United States Tru

Whitehall Street, 21st Floor, New York, New York 10004, so as to be actually received

than **4:00 p.m. on June 26, 2012**.  Unless timely objections are filed, the Order may b

without a hearing.

**PLEASE TAKE FURTHER NOTICE,** that if timely objections are filed and serve

the Court so directs, a hearing will be scheduled before the Honorable Robert E. Gerbe

States Bankruptcy Judge, in his Courtroom, upon such additional notice as the Cc

direct.

Dated: Jericho, New York
       June 8, 2012

                                        SILVERMANACAMPORA LLP
                                        Attorneys for Kenneth P. Silverman,
                                        the Chapter 7 Trustee of North Hills

                              By:       s/ David J. Mahoney
                                        David J. Mahoney
                                        A Member of the Firm
                                        100 Jericho Quadrangle, Suite 300
                                        Jericho, New York  11753
                                        (516) 479-6300

**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.,
Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

In re:

        NORTH HILLS, L.P.,

             Debtor.

--------------------------------------------------------------X

KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

             Plaintiff,

         -against-

THE ESTATE OF ANITA SEITS, AND
MERRILL LYNCH & CO., INC.,

             Defendants.

--------------------------------------------------------------X

KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

             Plaintiff,

         -against-

EVANS FOUNDATION,

             Defendant.

--------------------------------------------------------------X

KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

             Plaintiff,

         -against-

CW MCHUGH CORP.,

             Defendant.

--------------------------------------------------------------X

Chapter 7
Case No.: 09-13035 (REG)

Adv. Pro. No.: 11-02361 (REG)

Adv. Pro. No.: 11-02368 (REG)

Adv. Pro. No.: 11-02370 (REG)

**TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019
FOR AN ORDER APPROVING THE STIPULATION SETTLING THE TRUSTEE
CLAIMS AGAINST THE ESTATE OF ANITA SEITS, MERRILL LYNCH & CO., INC.,
FOUNDATION, AND CW MCHUGH CORP., AND PROVIDING FOR RELATED RE**

Kenneth P. Silverman, Esq., in his capacity as chapter 7 trustee (the "Trustee"

North Hills L.P. (the "Debtor") bankruptcy estate, by his attorneys SilvermanAcampo

respectfully submits this motion (the "Motion") under 11 U.S.C. §105 and Fed. R. Bankr.

seeking the entry of an Order (annexed hereto as **Exhibit 1**) approving the proposed se

of the Trustee's claims against The Estate of Anita Seits, Merrill Lynch & Co., Inc.

Foundation, and CW McHugh Corp. (collectively, the "Defendants"), as memorialize

Stipulation Settling the Trustee's Claims Against the Defendants (the "Settlement Agre

which has been annexed hereto as **Exhibit 2**. All parties are encouraged to review the

Settlement Agreement in its entirety for the specific terms of the proposed settlement.

### Background

1.      On May 13, 2009 (the "Filing Date"), four petitioning creditors filed an in

chapter 7 petition against the Debtor pursuant to 11 U.S.C. §303(b), in the Unite

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      On June 3, 2009, the Debtor's general partner, North Hills Manageme

through its managing member, Mark Evan Bloom, consented to the entry of an Order fo

3.      On June 25, 2009, the Bankruptcy Court entered an Order for Reli

Debtor's case.

4.      On June 30, 2009, the office of the United States Trustee issued a

Appointment by which the Trustee, was appointed the chapter 7 trustee of the Debtor's

5.      Thereafter, the Trustee and his counsel have investigated the financial

the Debtor, including a detailed analysis of the extent and validity of certain transfers

the Debtor to: (i) Anita Seits ("Seits") and Merrill Lynch, Pierce, Fenner and Smith, Inc

in the above-captioned adversary proceeding numbered 11-02361 as Merrill Lynch &

("Merrill"), (ii) Evans Foundation ("Evans"), and (iii) CW McHugh Corp. ("McHu

collectively with Seits and Evans, the "Seits Defendants").

6.    On or about June 23, 2011, the Trustee commenced the above-ca

adversary proceeding, numbered 11-02348 (the "Seits Action") against Seits and Merri

filing a complaint, wherein the Trustee asserted that Seits and Merrill received transfers t

Debtor that exceeded their deposits into the Debtor's North Hills Fund, in an amount

than Three Million Nine Hundred Ninety-One Thousand Seven-Hundred Fifty-Seven and

($3,991,757.00) Dollars (the "Seits Transfers"). The Trustee further asserted that th

Transfers are avoidable pursuant to 11 U.S.C. §§105, 502, 544, 550 and 551 and N

Debtor and Creditor Law §§273, 274, 275, 276 and 276-A and New York common

"Seits Claims").

7.    On or about June 23, 2011, the Trustee commenced the above-ca

adversary proceeding, numbered 11-02368 (the "Evans Action") against Evans by the f

complaint, wherein the Trustee asserted that Evans received transfers from the Del

exceeded its deposits into the Debtor's North Hills Fund, in an amount no less th

Hundred Twenty Thousand and 00/100 ($420,000.00) Dollars (the "Evans Transfei

Trustee further asserted that the Evans Transfers are avoidable pursuant to 11 U.S.C

502, 544, 550 and 551 and New York Debtor and Creditor Law §§273, 274, 275, 276 ar

and New York common law (the "Evans Claims").

8.    On or about June 23, 2011, the Trustee commenced the above-c

adversary proceeding, numbered 11-02370 (the "McHugh Action" and collectively with

Action and the Evans Action, the "Adversary Proceedings") against McHugh by the f

complaint wherein the Trustee asserted that McHugh received transfers from the De

exceeded its deposits into the Debtor's North Hills Fund, in an amount no less than Six

Forty-One Thousand and 00/100 ($641,000.00) Dollars (the "McHugh Transfe

collectively with the Seits Transfers and the Evans Transfers, the "Transfers"). The

further asserted that the McHugh Transfers are avoidable pursuant to 11 U.S.C. §§

544, 550 and 551 and New York Debtor and Creditor Law §§273, 274, 275 and 2

New York common law (the "McHugh Claims" and collectively with the Seits Claims ar

Claims, the "Trustee's Claims").

9.    Thereafter, the parties engaged in informal discovery related to the T

Claims and the alleged defenses asserted by Defendants.

10.    The Trustee and Defendants have engaged in extensive settlement dis

in an effort to consensually resolve the Adversary Proceedings. In order to avoid th

expenses and uncertainty of continued litigation, the parties have now agreed to res

Trustee's Claims upon the terms and conditions contained in the Settlement Agreement

11.    For all of the reasons set forth herein, the Trustee submits that accep

Seits Defendants' offer to remit Two Hundred Thirty Thousand and 00/100 ($230

Dollars (the "Settlement Sum") in full and final settlement of the Trustee's Clai

reasonable exercise of the Trustee's business judgment and is in the best interes

Debtor's estate.

### Settlement

12.    The Trustee has determined that settling the Adversary Proceedings

Settlement Sum is the most economical and efficient way to realize a meaningful and t

recovery for the benefit of creditors without the need to incur legal fees and risks inhe

the prosecution of the Trustee's Claims and any resulting judgment enforcement efforts

13.    After consultation with his retained professionals and in the exercis

business judgment, the Trustee has determined that the payment of the Settlem

outweighs the potential net recovery to the estate if the Trustee elected to prose

Trustee's Claims through trial and to enforce a resulting judgment against Defendants.

14.    In light of the foregoing, and mindful of the costs and risks of litig

Trustee's Claims, the Trustee has agreed to accept the Settlement Sum.

### Basis for Relief Requested

15.    Federal Rule of Bankruptcy Procedure 9019(a), which governs the ac

compromises and settlement, provides:

> On motion by the trustee and after notice and hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

16.     In approving a compromise and settlement, the Bankruptcy Court is rec

make an "informed and independent judgment" as to whether the compromise and settl

fair and equitable based on an:

> ..[e]ducated estimate of the complexity, expense and likely duration of [any] litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process, in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.[1]

17.     In making its determination on the "propriety of the settlement," the Cou

consider whether the proposed settlement is in the "best interest of the estate."[2]   As

*Arrow Air*, the "approval of [a] proposed compromise and settlement is a matter of thi

sound discretion." *Arrow Air*, 85 B.R. at 891.   In passing upon a proposed settlem

bankruptcy court does not substitute its judgment for that of the trustee." *In re Depo*, 7

384 (citations omitted).   The bankruptcy court is not required "to decide the numerous c

of law and fact raised by [objectors].... [R]ather [the Court should] canvass the issues

whether the settlement falls below the lowest point in the range of reasonableness."[3]   Ir

---

[1] *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 414, 424-425, *reh'g denied*, 391 U.S. 909 (1968). *See In re Arrow Air, Inc.*, 85 B.R. 886, 891 (B Fla. 1988); *In re Bell & Beckwith*, 77 B.R. 628, 611 (Bankr. N.D.Ohio), *aff'd*, 87 B.R. 472 ( 1987); *Cf. Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.)*, 67 B.R. 378, 38 1986) ("the law favors compromise")

[2] *Handler v. Roth (In re Handler)*, 386 B.R. 411, 420 (Bankr. E.D.N.Y. 2007)(quoting *In re Communications Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005)); *Depo v. Chase Lincoln I N.A. (In re Depo)*, 77 B.R. 381, 383 (N.D.N.Y. 1987), *aff'd*, 863 F.2d 45 (2d Cir. 1988).

[3] *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464

upon the reasonableness of a proposed compromise, the Court "may give weigh

opinions of the Trustee, the parties and their counsel." *Bell & Beckwith*, 77 B.R. at 612

*re Handler*, 386 B.R. at 421.

18.     The Second Circuit in *In re Iridium Operating LLC*[4] outlined the followir

factors (the "Iridium Criteria") to be considered by a court in deciding whether to ap

compromise or settlement:

 i. the balance between the litigation's possibility of success and the settlement's present and future benefits;

 ii. the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment if the settlement is not approved;

 iii. the paramount interest of the creditors, including the proportion of class members who do not object to or who affirmatively support the settlement;

 iv. whether other parties in interest support the settlement;

 v. the competency and experience of the counsel who support the proposed settlement;

 vi. the relative benefits to be received by individuals or groups within the class; and

 vii. the extent to which the settlement is the product of arm's length bargaining.

See *In re Iridium Operating LLC*, 478 F.3d at 462.

19.     By the terms of the Settlement Agreement, the Seits Defendants have a

remit the Settlement Sum, and in exchange, the Trustee has agreed to dismiss the A

Proceedings.

20.     If the Trustee had rejected the Seits Defendants' offer of the Settlement

Debtor's estate would necessarily incur the costs associated with litigating the Trustee

---

*See In re Handler*, 386 B.R. at 420-21.

[4] 478 F.3d 452 (2d Cir. 2007)

through three (3) separate trials. Based upon his review of the documents produced,
consideration of the arguments in conjunction with the parties' settlement negotiati
Trustee believes that the best interests of the estate are served by settling the Trustee':
for the Settlement Sum which constitutes a 100% recovery of all Transfers made by th
to Defendants within two (2) years of the Filing Date.

21.     Settling the Trustee's Claims under the terms of the Settlement Agreer
provide a guaranteed benefit to the Debtor's estate, in an amount greater than may ha
accomplished or possible if the Trustee litigated the Adversary Proceeding to final judgn

22.     Furthermore, although the Trustee does not envision a complex or pi
litigation, litigation by its nature is potentially complex and protracted. The Se
Agreement bypasses all of the potential complexities and delays associated with litigatic

23.     Moreover, the Trustee does not anticipate that any of the Debtor's crec
object to the Settlement Agreement.

24.     Finally, the Trustee and Defendants are represented by counsel,
Settlement Agreement is the product of arm's length bargaining.

25.     Thus, after considering the standards governing Fed. R. Bankr. P. 9019,
law cited above, and the evidence supporting Defendants' defense, the Trustee, in his
judgment, believes that settling the Trustee's Claims for the Settlement Sum is
equitable, and in the best interests of the Debtor's estate and its creditors. Accordi
Trustee respectfully requests that the Court enter an order approving the S
Agreement.

26.     No previous application for the relief requested herein has been made
any other Court.

### Notice

27.     The Trustee's professionals intend to serve the Notice of Presentment, |
Order and the instant Motion upon (i) Mark Bloom, former principal of the Debtor: (ii

counsel to Mark Bloom; (iii) Defendant's counsel; (iv) the appropriate taxing authorities

Office of the United States Trustee for Region 2; (iv) all known creditors of the Debtor'

(v) counsel to parties representing defendants in all adversary proceedings; and (

persons who have formally appeared and requested service in this proceeding pur

Bankruptcy Rule 2002. The Trustee submits that the proposed service of the instar

complies with Bankruptcy Rule 9019.

    **WHEREFORE,** the Trustee respectfully requests that this Court: (i) grant th

Motion authorizing and approving the Settlement Agreement; (ii) close the a

proceeding; and (iii) grant such other further and different relief as the Bankruptcy Cou

just and proper.

Dated: Jericho, New York
        June 8, 2012

                              **SILVERMANACAMPORA LLP**
                              Attorneys for Kenneth P. Silverman
                              the Chapter 7 Trustee of North Hills

                      By:   *s/ David J. Mahoney*
                            David J. Mahoney
                            A Member of the Firm
                            100 Jericho Quadrangle, Suite 300
                            Jericho, New York 11753
                            (516) 479-6300

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re:

      NORTH HILLS, L.P.,

           Debtor.
--------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

           Plaintiff,

     -against-

THE ESTATE OF ANITA SEITS, AND
MERRILL LYNCH & CO., INC.,

           Defendants.
--------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ. as
Chapter 7 Trustee of North Hills, L.P.,

           Plaintiff,

     -against-

EVANS FOUNDATION,

           Defendant.
--------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

           Plaintiff,

     -against-

CW MCHUGH CORP.,

           Defendant.
--------------------------------------------------------------X

Chapter 7
Case No.: 09-13035 (REG)

Adv. Pro. No.: 11-02361 (REG)

Adv. Pro. No.: 11-02368 (REG)

Adv. Pro. No.: 11-02370 (REG)

**ORDER UNDER BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT,
CLOSING ADVERSARY PROCEEDINGS, AND GRANTING RELATED RELIEF**

    Upon the motion (the "Motion") of Kenneth P. Silverman, Esq., the chapter 7 trustee (t[

"T............")  of  the  North  Hills,  L.P.  (the  "Debtor")  bankruptcy  estate,  by  his  attorne

SilvermanAcampora, LLP, having moved this Court pursuant to a Notice of Presentment dated

June 8, 2012, seeking the entry of an Order: (i) approving the stipulation settling the Trustee's

claims against The Estate of Anita Seits, Merrill Lynch & Co., Inc., Evans Foundation, and CV

McHugh Corp. (the "Settlement Agreement"); (ii) closing the adversary proceeding; and, (iii)

granting the Trustee such other relief as this Court deems just and proper; and upon the

affidavit of service filed with the Court; and no objections to the Motion having been filed; and

the Court having found that the settlement of the Trustee's claims as set forth in the Settlement

Agreement is fair and reasonable and in the best interest of the estate; and the Court having

found that service of the Notice, Motion with Exhibits and proposed Order is sufficient; and

sufficient cause having been shown therefore; and no additional notice being necessary or

required;

　　　　NOW, THEREFORE, upon the Motion of the Trustee and pursuant to Rule 9019(a) of

the Federal Rules of Bankruptcy Procedure and other applicable law, it is hereby

　　　　ORDERED, that the Motion is granted, and it is further

　　　　ORDERED, that the Settlement Agreement is approved, and it is further

　　　　ORDERED, that service of the Notice of Presentment, Motion with Exhibits and

Proposed Order, is sufficient; and it is further

　　　　ORDERED, that the Clerk of the Court is directed to close this adversary proceeding

and it is further

**ORDERED**, that the Trustee be, and hereby is authorized and directed to take suc

steps, execute such documents and expend such funds as may be reasonably necessary t

effectuate and implement the terms and conditions of this Order.

Dated: New York, New York
      June   ___, 2012

                                        **SO ORDERED:**


                                        _____
                                        HONORABLE ROBERT E. GERBER
                                        United States Bankruptcy Judge

# EXHIBIT 2

**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq., Ch. 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
David J. Mahoney, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

         NORTH HILLS, L.P.,

              Debtor.
----------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

              Plaintiff,

       -against-

THE ESTATE OF ANITA SEITS, AND
MERRILL LYNCH & CO., INC.,

              Defendants.
----------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

              Plaintiff,

       -against-

EVANS FOUNDATION,

              Defendant.
----------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ., as
Chapter 7 Trustee of North Hills, L.P.,

              Plaintiff,

       -against-

CW MCHUGH CORP.,

              Defendant.
----------------------------------------------------------------X

Chapter 7
Case No.: 09-13035 (REG)

Adv. Pro. No.: 11-02361 (R

Adv. Pro. No.: 11-02368 (R

Adv. Pro. No.: 11-02370 (R

SETTLEMENT AGREEMENT

## A.    The Bankruptcy Case

I.      On May 13, 2009 (the "Filing Date"), four petitioning creditors filed an inv

chapter 7 petition against North Hills L.P. bankruptcy estate (the "Debtor") pursuant to 1

§303(b), in the United States Bankruptcy Court for the Southern District of New Y

"Bankruptcy Court").

II.     On June 3, 2009, the Debtor's general partner, North Hills Manageme

through its managing member, Mark Evan Bloom, consented to the entry of an Order for

III.    On June 25, 2009, the Bankruptcy Court entered an Order for Relie

Debtor's case.

IV.    On June 30, 2009, the office of the United States Trustee issued a I

Appointment by which Kenneth P. Silverman, Esq. (the "Trustee"), was appointed the c

trustee of the Debtor's estate.

V.     The Trustee and his counsel have investigated the financial affairs of the

including a detailed analysis of the extent and validity of certain transfers made by the I

(i) Anita Seits ("Seits") and Merrill Lynch, Pierce, Fenner and Smith, Inc., named in th

captioned adversary proceeding numbered 11-02361(REG) as Merrill Lynch & (

("Merrill"), (ii) Evans Foundation ("Evans"), and (iii) CW McHugh Corp ("McHu

collectively with Seits and Evans, the "Seits Defendants"). The Seits Defendants and N

hereinafter referred to as the "Defendants."

## B.    The Adversary Proceedings

VI.    On or about June 23, 2011, the Trustee commenced the above-c

adversary proceeding, numbered 11-02361 against Seits and Merrill by the filing of a c

wherein the Trustee asserted that Seits and Merrill received transfers from the De

exceeded their deposits into the Debtor's North Hills Fund, in an amount to be deter

trial but in no event less than Three Million Nine Hundred Ninety-One Thousand Seven

asserted that the Seits Transfers are avoidable pursuant to 11 U.S.C. §§105, 502, 544, 551 and New York Debtor and Creditor Law §§273, 274, 275, 276 and 276-A and N common law (the "Seits Claims").

VII.     On or about June 23, 2011, the Trustee commenced the above-c adversary proceeding, numbered 11-02368 against Evans by the filing of a complaint, the Trustee asserted that Evans received transfers from the Debtor that exceeded its into the Debtor's North Hills Fund, in an amount to be determined at trial but in no ev than Four Hundred Twenty Thousand and 00/100 ($420,000.00) Dollars (the Transfers"). The Trustee further asserted that the Evans Transfers are avoidable pursu U.S.C. §§105, 502, 544, 550 and 551 and New York Debtor and Creditor Law §§273, 2 276 and 276-A and New York common law (the "Evans Claims").

VIII.    On or about June 23, 2011, the Trustee commenced the above-c adversary proceeding, numbered 11-02370 against McHugh by the filing of a co wherein the Trustee asserted that McHugh received transfers from the Debtor that exc deposits into the Debtor's North Hills Fund, in an amount to be determined at trial l event less than Six Hundred Forty-One Thousand and 00/100 ($641,000.00) Dol "McHugh Transfers"). The Trustee further asserted that the McHugh Transfers are a pursuant to 11 U.S.C. §§105, 502, 544, 550 and 551 and New York Debtor and Cred §§273, 274, 275, 276 and 276-A and New York common law (the "McHugh Clai collectively with the Seits Claims and Evans Claims, the "Trustee's Claims").

IX.     Thereafter, the undersigned counsel of each Defendant contacted the undersigned counsel, requesting an extension of each Defendant's deadline to file a re pleading so that the parties could informally exchange discovery and discuss the pos entering into a consensual settlement of the claims asserted by the Trustee.

X.     The Trustee has granted the requested extensions to each Defendant's to file responsive pleadings and the parties have engaged in informal discovery relati

Trustee's Claims and the alleged defenses asserted by Defendants.

XI.    In the spirit of compromise and without any admission of liability, t
Defendants have offered to remit the sum of Two Hundred Thirty Thousand anc
($230,000.00) Dollars (the "Settlement Sum") to the Trustee in full and final settleme
Trustee's Claims.  Under the terms of the proposed settlement, Merrill will not be respor
payment of any portion of the Settlement Sum, but will provide releases to all other ç
exchange for releases from those parties.

XII.    Based upon the Trustee's review of all documentation related to the T
and his investigation of all attendant factors, the Trustee has, in his business judgmen
to settle the Trustee's Claims upon the following terms and conditions, which the
believes are fair and reasonable, especially in light of the costs and uncertainty associ
litigation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and ar
parties hereto, that the Trustee's Claims be resolved upon the terms and conditions
herein as follows (the "Stipulation"):

## Defendants' Obligation to Pay the Settlement Sum

1.    This Stipulation is subject to the entry of a Bankruptcy Court Order appro
Agreement (the "Approval Order").  The Trustee's counsel will promptly file and serve
(the "Bankr. R. 9019 Motion") seeking the entry of the Approval Order under Rule 90
Federal Rules of Bankruptcy Procedure.

2.    On or before April 30, 2012, the Seits Defendants will remit the Settlem
to "Kenneth P. Silverman, Esq., as Chapter 7 Trustee," by delivering a check to the
counsel at SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, N
11753, Attention: David J. Mahoney, Esq.

3.    If the Settlement Sum is received by the Trustee prior to the date the

on any appeal if any appeal is filed (the "Effective Date"), the Settlement Sum will be

segregated escrow account maintained by the Trustee or his counsel, until the Effective

4.  On or after the Effective Date, the Trustee is authorized to release the Se

Sum from the segregated escrow account and deposit it into the Trustee's estate bank a

5.  If (i) the Bankruptcy Court declines to enter the Approval Order by entry o

non-appealable Order denying the Bankr. R. 9019 Motion; or (ii) the Approval

overturned on appeal by the entry of final non-appealable order of a higher court, the

will promptly return the Settlement Sum to counsel for the Seits Defendants at

O'Connor, 1900 Market Street, Philadelphia, Pennsylvania 19103; Attn: Eric L. Scherli

and thereafter the Stipulation will be null and void and of no force and effect and

contained in this Stipulation will be deemed an admission or waiver of the rights of e

Trustee or Defendants, and this Stipulation shall not be admissible in any sul

proceeding.

**Releases**

6.  Upon the Effective Date and the Trustee's receipt and clearance o

Settlement Sum, the Trustee and the Debtor's estate release and forever discharge De

their affiliated entities, agents, representatives, present or former partners, officers, a

directors, assigns and successors-in-interest (the "Defendant Releasees") from any

claims, claims for relief, demands, costs, expenses, damages, liabilities, and obligatior

out of or relating to the Trustee's Claims or any claims that the Trustee or Debtor co

asserted arising from or relating to any transfer made by the Debtor of its interest in pi

any of the Defendants.

7.  Upon the Effective Date, the Seits Defendants release, discharge and v

and all claims against each other, the Debtor's estate, Merrill, the Trustee and the

agents, attorneys, assigns and successors-in-interest from any and all claims, proofs

claims for relief, demands, costs, expenses, damages, liabilities, and obligations of al

that could have been asserted in the context of the above-captioned adversary procee
that arise from or relate to either the Debtor's pre-petition financial affairs or the 1
administration of the Debtor's estate.

8.      Upon the Effective Date, Merrill releases, discharges and waives al
arising out of the Seits Transfers against the Seits Defendants, the Debtor's estate, the
and the Trustee's agents, attorneys, assigns and successors-in-interest, including al
proofs of claims, claims for relief, demands, costs, expenses, damages, liabiliti
obligations of any nature relating to the Seits Transfers.

**No Admission**

9.      It is understood and agreed that this Stipulation is entered into to avc
and protracted litigation.  Neither the execution of this Stipulation, nor the paymer
Settlement Sum shall be construed as an admission on the Seits Defendants' p;
clarification, this paragraph is not intended and shall not be deemed to affect t
Defendants' obligation to make timely payment of the Settlement Sum.

**Miscellaneous**

10.      This Stipulation may be executed in one or more counterparts, with €
being deemed a part of the original document, and facsimile or other electronic signatu
be deemed an original signature.

11.      The person executing this Stipulation on behalf of the Trustee warr;
represents that he is authorized and empowered to execute and deliver this Stipu
behalf of the Trustee and the Debtor's estate.

12.      The persons on behalf of Defendants warrant and represent that he
authorized and empowered to execute and deliver this Stipulation on behalf of the re
Defendants and the related Defendant Releasees.

13.      This Stipulation may not be altered, modified, or changed unless ir

14.    The Bankruptcy Court shall retain exclusive jurisdiction over the subject ı this Stipulation, including but not limited to its enforcement and the implementaı interpretation of its terms and conditions.

15.    This Stipulation shall be governed by the laws of the State of New Yorł with respect to matters as to which federal law is applicable without regard to any co law principles.

16.    The Trustee and Defendants agree that they are each responsible for t costs and attorneys' fees incurred in connection with the Adversary Proceeding Stipulation.

Dated: Jericho, New York
April 16, 2012

SILVERMANACAMPORA LLP
Attorneys for Kenneth P. Silverman, Esq.,
The Chapter 7 Trustee of North Hills L.P.

By:    s/ David J. Mahoney
David J. Mahoney
A Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York  11753
(516) 479-6300

Dated: Philadelphia, Pennsylvania
April 16, 2012

COZEN O'CONNOR
Attorneys for the Estate of Anita Seits, Eva
Foundation and CW McHugh Corp.

By:    s/ Eric L. Scherling
Eric L. Scherling, Esq.
1900 Market Street
Philadelphia, PA 19103
(215) 665.2042

Dated: New York, New York
April 16, 2012

ARNOLD & PORTER LLP
Attorneys for Merrill Lynch, Pierce, Fenner
Smith, Inc., sued as Merrill Lynch & Co., In

By:    s/ Pamela Miller
Pamela Miller, Esq.
399 Park Avenue
New York, New York 10022-4690
(212) 715-1376