**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
the Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Ronald J. Friedman
Justin S. Krell

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

    NORTH HILLS, L.P.,

                      Debtor.
----------------------------------------------------------------X

Chapter 7
Case No.: 09-13035 (REG)

## RESPONSE TO LETTER OBJECTION FROM CREDITOR JOSEPH BORINI

Kenneth P. Silverman, Esq. as the Chapter 7 Trustee, of the above-captioned Debtor, by and through his counsel SilvermanAcampora LLP submits this response to the December 7, 2020 correspondence of creditor Joseph Borini (ECF#112) (the "Letter Objection" annexed hereto as Exhibit "A") and in further support of the Trustee's Final Report (ECF #110) (the "Trustee's Final Report") and the Final Fee Application of SilvermanAcampora LLP (ECF#110, Attachment 1) (the "Final Fee Application") filed in this matter and respectfully sets forth as follows:

### Preliminary Statement

1.    On May 13, 2009 the petitioning creditors filed an involuntary chapter 7 petition against the Debtor; and thereafter the Debtor's general partner North Hills Management LLC through its managing member Mark Evan Bloom ("Bloom") consented to an order for relief. Upon the Trustee's appointment and throughout the entirety of the proceeding, no one appeared on behalf of the Debtor in any manner whatsoever. Ultimately, Bloom was prosecuted by the United States Attorneys' Office for his criminal conduct which led to his conviction and federal incarceration[1].

---

[1] Bloom pled guilty in July 2009, and his sentencing was adjourned on multiple occasions and was ultimately

Throughout the administration of this Debtor's estate, the United States Attorneys' Office, which had seized not only the Debtor's books and records prior to the filing of the bankruptcy proceedings, but had also sought forfeiture of the assets of Bloom, his wife and a series of Bloom's related entities; failed to provide any meaningful cooperation or disclosure to the Trustee. While a number of efforts were made among the Trustee, his counsel and the United States Attorneys' office to facilitate cooperation, those efforts did not yield anything other than the belated turnover of some documents. No schedules or statement of financial affairs was ever filed by the Debtor or Bloom and Bloom never sat for an examination or deposition notwithstanding numerous attempts to compel cooperation. While the Trustee and his counsel are cognizant of the hours expended in administering the Debtor's estate, the results achieved do represent the aggregation of the Court approved Federal Rule 9019 settlements[2] of the 48 adversary proceedings commenced in an effort to achieve the best possible result for creditors.

## Response

2.      The Trustee's Final Report does reflect over $15 million in filed unsecured claims to be allowed in this proceeding. The Letter Objection represents only a portion of those unsecured claims. The pro-rata distribution set forth in the Trustee's Final Report provides a recovery to unsecured creditors. No other creditor has filed a response or other objection to the Trustee's Final Report of the Final Fee Application.

3.      The 48 separate adversary proceedings were all commenced following a detailed review and reconstitution of Debtor books and records using bank statements and other records

---

sentenced in July 2015. At the time of his guilty plea, Trustee's counsel (who was in attendance) was advised that there would be no examination or interview of Bloom until after the sentencing was completed. Although it was not disclosed to the Trustee's counsel at the time, Bloom had pled guilty and was cooperating with the federal authorities in connection with the contemporaneous prosecution of Stephen Walsh and Paul Greenwood arising from the WG Trading Investors L.P. ponzi scheme.

[2] Notably, not one of the Rule 9019 motions interposed in this proceeding was objected to in any manner.

2

obtained by the Trustee and his professionals from various third parties. For example, at the outset of the proceeding, the Trustee and his counsel entered into a protective order (approved by the Court) with certain creditors who had independently obtained information to facilitate the estate's administration while also conducting the bank document analysis following the Bankruptcy Rule 2004 production from JP Morgan Chase. It is worth noting, that the Trustee's efforts were frustrated in large part by the federal prosecution's refusal to make Bloom available until the conclusion of the Walsh/Greenwood/WG Trading prosecution.  By that point, Bloom had been sentenced and the numerous attempts to schedule his examination at the federal corrections facility were thwarted by Bloom's refusal to appear and the Bureau of Prison's inability to compel his appearance.

4.     The Court is certainly familiar with the concomitant costs and risks inherent in the pursuit of adversary proceedings, and in this case there was a plethora of issues presented to the Trustee in the nature of defenses to the claims being pursued. In each instance, the Trustee and his professionals assessed the risks and ultimately the resolutions were all documented in the Bankruptcy Court approved Bankruptcy Rule 9019 settlements. While the Letter Objection, attempts to criticize the Trustee for the administration of the estate, it does not properly take into consideration the myriad issues confronted by this Trustee and his counsel in this matter, as descried below.  For example, the Trustee expended time and resources in (i) attempting to pursue Bloom and gain some modicum of cooperation and information, the federal prosecution prohibited that from becoming reality; (ii) assessing collectability and enforcement of any potential judgments obtained, (iii) assessing the asserted defenses of the twenty (20) defendants who were able to supply documentary proof that they had deposited more into the Debtor than they had received and were therefore in fact "net losers" under the Ponzi scheme, (iv) analyzing the

documents obtained from the United States Attorney's Office (albeit limited in scope) together with the bank documents and other information obtained via the Bankruptcy Rule 2004 order and the protective order entered in this proceeding.

## **Conclusion**

Unfortunately, the recovery to creditors in this case was limited by the facts and circumstances; the prosecutors obtained an order of forfeiture and recovered assets from Bloom and his family which was not shared with the estate. The Trustee respectfully submits that the Letter Objection be overruled and the Court grant the Trustee's Final Report and accompanying Final Fee Applications together with such other further and different relief as to this Court seems just and proper.

Dated:  Jericho, New York  
        December 14, 2020

S<small>ILVERMAN</small>A<small>CAMPORA</small> **LLP**

By: *s/Ronald J. Friedman*  
     Ronald J. Friedman  
Member of the Firm  
100 Jericho Quadrangle, Suite 300  
Jericho, New York 11753  
Telephone:  (516) 479-6300